# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 9, 2012

No. 10-60776

Lyle W. Cayce
Clerk

EDUARDO CHAPA VILLA; MIREYA CHAPA; SAMANTHA CHAPA
GONZALEZ; EDUARDO CHAPA GONZALEZ; JESSICA CHAPA
GONZALEZ,

Petitioners

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of Decision of the
Board of Immigration Appeals

Before DeMOSS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

This case exemplifies why the immigration law of the United States is
inexcusably complicated and in need of immediate revision.

Mireya Chapa, her husband Eduardo Chapa Villa, and their three
children, challenge the decisions of the Immigration Judge ("IJ") and Board of
Immigration Appeals ("BIA") denying the family's application for lawful

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-60776

permanent resident ("LPR") status.  Mireya argues she is immediately eligible for LPR status based on a Western Hemisphere priority date ("WHPD") derived from her parents' immigration to the United States. For the following reasons, we deny the Chapas' petition and affirm the decision of the BIA.

## FACTS AND PROCEEDINGS

Mireya Chapa, her husband, Eduardo Chapa Villa, and their children, Samantha Chapa Gonzalez, Eduardo Chapa Gonzalez, and Jessica Chapa Gonzalez (the "Chapas"), are natives and citizens of Mexico who were admitted to the United States on July 17, 2001, as nonimmigrant B-2 visitors. Their visitor status expired on January 16, 2002, and they have remained in the United States without authorization. During the immigration hearings leading to this appeal, the Chapas, through counsel, have conceded their removability pending their challenge to the IJ and BIA decisions.

The foundation of the Chapas' appeal that Mireya Chapa is eligible for a WHPD finds its roots in the 1950s, when Mireya's parents immigrated to this country.  Mireya's father immigrated to the United States as a lawful permanent resident on November 14, 1955.  On February 26, 1956, Mireya's father and mother were married in Mexico and Mireya's mother then immigrated to the United States on May 25, 1956. Mireya's parents had a son, born in the United States, in 1957. Mireya was born several years later in Mexico on March 31, 1962.

On April 24, 1962, Mireya entered the United States as a lawful permanent resident in accordance with then-applicable internal Operating Instruction 211 ("OI 211") of the former Immigration and Naturalization Service ("INS"). Her I-94 admission form was marked "Female child admitted for permanent residence without immigrant visa in accordance with OI 211." At an unknown date, Mireya obtained an I-151 (green card).  However, on December 17, 1975, she voluntarily surrendered the green card in exchange for an I-186

2

No. 10-60776

nonresident alien border crossing card. The I-275 immigration form filed at the time Mireya surrendered her green card included a notation by the INS official that Mireya and her mother claimed to have been living in Mexico since 1967. Mireya continued to live in Mexico and eventually married her current husband there. The couple's three children were all born in Mexico in 1985, 1989, and 1996.

In July 2001, the Chapas entered the United States as a family based on the aforementioned B-2 visitor visas. Prior to the expiration of their B-2 visitor status, Mireya's U.S.-born older brother filed an I-130 visa petition on December 26, 2001, on behalf of Mireya, with her husband and children listed as derivative beneficiaries. *See* 8 C.F.R. § 204.1. On the same day, the Chapas filed I-485 applications for adjustment of status with the United States Citizenship and Immigration Services ("USCIS"). On November 5, 2004, the I-130 visa petition was approved, resulting in a visa priority date for Mireya, her husband, and children, of December 26, 2001, the date the I-130 petition was filed.

On November 15, 2004, USCIS denied the Chapas' applications for adjustment of status because there were no visas "immediately available" under the current immigration quota system. 8 C.F.R. § 245.1(g)(1). In November 2004, at the time of the USCIS decision, it is undisputed that the then-current priority date for fourth preference Mexican immigrants, such as Mireya, was much earlier than the December 2001 priority date established by the approved I-130 visa petition.

Upon the Chapas' motion, the case was reopened, with Mireya claiming her date of birth in 1962 as a visa priority date based on a savings clause in a 1976 amendment to the Immigration and Nationality Act ("INA") (discussed below). After a second interview, USCIS again denied the Chapas' applications for adjustment of status in March 2007. The USCIS explained "you in fact obtained your residency without an immigrant visa in accordance with OI 211

3

and are not entitled to now use your date of birth under the savings clause as a priority date to apply toward the approved visa petition filed on your behalf."

Based on the denial of the applications for adjustment of status, the Department of Homeland Security ("DHS") issued Notices to Appear for the Chapas on April 24, 2007, charging them with removability pursuant to 8 U.S.C. § 1227(a)(1)(B), as aliens who after admission as nonimmigrants remained in the United States longer than permitted. Their individual cases were consolidated and a hearing was set before an IJ.

The IJ sustained the charges of removability in light of the Chapas' concession of overstaying their nonimmigrant visas. The Chapas informed the IJ of their intent to seek relief from removal in the form of an adjustment of status, and the court allowed them to brief the issue.

In their brief, the Chapas argued to the IJ that Mireya was eligible for not just one, but two, priority dates under the WHPD system established by the 1976 amendments to the INA—the date of her parents' marriage in 1956 and her date of birth in 1962. The Chapas argued that Mireya's father was a "Western Hemisphere applicant" and that Mireya's mother was an "after-acquired spouse." Though acknowledging that a spouse acquired after a priority date has been established cannot usually benefit from a priority date based on the marriage, the Chapas argued that Mireya's mother was accorded the date of her marriage as a priority date because she was an after-acquired spouse who became a spouse during a temporary absence abroad, based on an exception found in a note to a 1970 regulation. *See* 22 C.F.R. § 42.62 note 2.3 (1970). The Chapas apparently then conceded that this priority date of her parents' marriage was no longer available to Mireya because she was admitted for permanent residence in 1962 with her mother based on the use of this date.

However, the Chapas asserted that as a child of an "after-acquired spouse" immigrating alone, she was entitled to use her date of birth as a second,

alternative priority date. Mireya argued she was entitled to use her date of birth as a priority date pursuant to the 1976 amendment to the INA, which provided that aliens from Western Hemisphere countries who had registered for immigration prior to 1977 could retain their priority dates (the above-termed WHPD) for purposes of subsequent visa petitions filed on their behalf (the 1976 "savings clause"). Act of October 20, 1976, Pub. L. No. 94-571, 90 Stat. 2703 § 9(b).

**The IJ's Decision**

The IJ issued a written decision pretermitting the Chapas' applications for adjustment of status. The IJ found that Mireya was ineligible to adjust status because she could not show that an immigrant visa was "immediately available." The IJ also noted that Mireya's fourth preference visa petition (the petition filed by her brother) was filed on December 26, 2001, and that the then-current priority date for fourth preference Mexican beneficiaries as of the hearing date was December 15, 1994. Accordingly, the IJ found that Mireya failed to establish that a visa was immediately available to her on the basis of the petition filed by her brother on her behalf.

The IJ further found that Mireya could not establish an earlier WHPD under the 1976 savings clause. First, the IJ concluded that the savings clause did not apply to Mireya because the provision only applies to aliens who (1) were "chargeable to the numerical limitation" contained in a 1965 law imposing a quota on family-based immigration from Western Hemisphere country applicants, and (2) had established a priority date with a consular official prior to the enactment of the quotas. Because Mireya entered the United States in 1962, the IJ found that she was not "subject to" the 1965 quota. The IJ commented that by the time the quota was established, Mireya had already gained permanent residence in the United States. Further, because Mireya was not subject to the quota, she could not, and did not, establish a priority date with

No. 10-60776

a consular official. The IJ concluded that Mireya was therefore not "waiting in line" for a visa when the 1976 savings clause was passed because she had already come and gone from the United States.

In the alternative, the IJ concluded that, even if the savings clause applied to Mireya, she had failed to establish that she had an earlier priority date available pursuant to that clause. The IJ explained that she understood the Chapas' argument as follows: (1) when Mireya's father entered the United States in 1962, he effectively petitioned for her residence at the border, and (2) the 1962 "petition" was entitled to not one, but two priority dates:  the date of Mireya's parents' marriage and Mireya's date of birth. The IJ then rejected this argument, finding that the Chapas had conceded that one of these dates would have been used when she entered the United States in 1962. The IJ further found the Chapas' argument that Mireya should retain the other date pursuant to the 1976 savings clause "creative" but "unsupported by authority."  The IJ noted that the Chapas cited no authority, and the IJ could find none, "suggesting that an immigrant petition could entitle an immigrant to multiple priority dates for one petition."  Further, the IJ found that a visa petition is a petition for a visa number which, once used, is no longer available. Because the IJ found that Mireya had used her visa number in 1962, she was not entitled to reuse a visa number based on a second priority date.

Finally, the IJ concluded that, even if Mireya had two priority dates—the date of her parents' marriage and her date of birth—she was no longer a child as defined by the INA, and, accordingly, she could not use her date of birth as a priority date in any event.  Therefore, the IJ was "not persuaded that [the Chapas were] entitled to use a priority date from a 1962 visa petition that was already granted." The IJ found the Chapas removable and denied their applications.

**The BIA's Decision**

6

No. 10-60776

The Chapas appealed the IJ's written and oral decisions to the BIA and the BIA dismissed the appeal in an unpublished, single judge decision. The BIA found that the factual findings of the IJ were not clearly erroneous and, exercising de novo review, the BIA adopted the IJ's "thorough and well-reasoned decisions." The BIA noted that the Chapas argued on appeal that Mireya did not need a visa and therefore did not use her priority date when she entered as a child but agreed with the IJ that Mireya entered initially in 1962 on the basis of her parents' visa and was not subject to the 1965 quota. The BIA further agreed with the IJ's conclusion that the Chapas presented no authority for the claim that Mireya possessed two priority dates, only one of which she claimed that she had used. Finally, as the IJ found, the BIA noted that the priority date for the visa petition filed by Mireya's brother was not current. The BIA therefore agreed with the IJ's conclusion that the Chapas were ineligible for adjustment of status because a visa petition was not immediately available.

The Chapas filed a timely petition for review and now argue that the "Chapa family's priority date is February 26, 1956"—the date of Mireya's parents' marriage. Mireya no longer argues that she is eligible for a priority date based on her date of birth.

## STANDARD OF REVIEW

This court generally only has authority to review the decision of the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). However, when the IJ's ruling affects the BIA's decision, this court also reviews the decision of the IJ. *Id.* Here, the BIA expressly adopted and affirmed "the Immigration Judge's thorough and well-reasoned decisions," so this court reviews the IJ's decision regarding Mireya's eligibility for an earlier priority date.

The agency's factual findings are reviewed for substantial evidence and factual findings are only reversed if the evidence compels a contrary conclusion.

No. 10-60776

*Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009).  Questions of law are reviewed de novo. *Id.*

## DISCUSSION

Mireya's only contention regarding the IJ's and BIA's decisions is that both rulings are incorrect insofar as each held that she is not entitled to a WHPD based on her parents' date of marriage under the 1976 savings clause.  If Mireya is eligible to claim her parents' 1956 date of marriage as a WHPD, she and her family would become immediately eligible for an adjustment to LPR status.  If not, they must return to Mexico until their 2001 priority date becomes eligible for an adjustment of status.

The text of the 1976 savings clause states:

> (b) An alien chargeable to the numerical limitation contained in section 21(e) of the Act of October 3, 1965 (79 Stat. 921), who established a priority date at a consular office on the basis of entitlement to immigrant status under statutory or regulatory provisions in existence on the day before the effective date of this Act shall be deemed to be entitled to immigrant status under section 203(a) (8) of the Immigration and Nationality Act and shall be accorded the priority date previously established by him.

Immigration and Nationality Act Amendments of 1976, Pub. L. No. 94-571 § 9(b), 90 Stat. 2703 (Oct. 20, 1976). The 1965 Act referenced in the savings clause refers to the quotas imposed on family-based immigration from Western Hemisphere countries, such as Mexico.  The quotas took effect on July 1, 1968 and were initially set at 120,000.  Pub L. No. 89-236, 79 Stat. 911 § 21(e) (Oct. 3, 1965).

Interpreting the savings clause and its potential applicability to Mireya's application for adjustment of status, the IJ considered both the historical and statutory context within which the savings clause was enacted, as well as the plain meaning of the language of the clause.  Summarizing the IJ's discussion, Mexican immigrants were not subject to quotas prior to 1965.  After the 1965 Act

8

No. 10-60776

mentioned in the savings clause, Mexican immigrants were subject to quotas beginning in 1968. Due to issues implementing the quotas and allocating visa petition priority dates for immigrants from Western hemisphere countries, Congress modified the system for assigning priority dates in 1976, including enacting the 1976 savings clause, to ensure that immigrants who were already "in line" when the quota system was put in place would maintain their spot in line.

To maintain their spot in line, the savings clause allowed then-pending applicants—termed registrants—to use their old, but unused priority dates. It also allowed any derivative beneficiaries in existence on the date of original registration with immigration officials to use the unused priority dates for later applications. Derivative beneficiaries include spouses and unmarried children under 21 on the date of original filing, as well as children born later from a marriage that existed on that date. This means that children born after the passage of the savings clause in 1976 can still qualify as derivatives if their parents were married and had applied for a visa prior to the quotas going into effect. The savings clause in the 1976 legislation allows the beneficiaries and derivatives to use the original date of filing (registering) for later I-130 applications.

Based on this historical review, the IJ considered the language of the savings clause and interpreted the plain language to include two requirements for aliens claiming eligibility for a WHPD under the savings clause: (1) the alien must have been subject to the quotas established in the 1965 Act, based on the "chargeable to the numerical limitation" language in the clause, and (2) the alien must have established a priority date at a consular office prior to the effect date of the Act based on the "who established a priority date at a consular office" language.

9

No. 10-60776

Based on a plain reading of the language in the savings clause, we agree with this interpretation. *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 405 (1979) ("[T]he starting point in every case involving construction of a statute is the language itself.") (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring)). Thus, when applying this plain meaning interpretation to Mireya's factual scenario, she is unable to take advantage of a WHPD based on her parents' marriage date. When Mireya entered the country in 1962 as a LPR with her parents, she was in no way 'subject to' the 1965 quota. By the time the quota went into effect in 1968, Mireya had long since gained permanent residence in the United States. Considering that Mireya obtained a green card sometime shortly after her entry in 1962, and did not surrender it until 1975, it would be illogical to also say she was "waiting in line" for something she already possessed when the quotas went into effect in 1968. Therefore, based on a plain meaning, the savings clause does not apply to Mireya's application.

Mireya's argument that she was actually living in Mexico since 1967, and therefore was subject to the 1968 quotas, fails in light of the record evidence. The I-275 form filed by immigration officials detailing when Mireya surrendered her green card is clearly dated several times as "12-17-75" and thus is conclusive that Mireya possessed a green card at the time the quotas went into effect in 1968. Not only was Mireya not subject to the 1965 quota, she was also not "waiting in line" for a visa as an alien who had registered for a visa but had not yet entered the United States as envisioned by the legislature when the savings clause was enacted.

Alternatively, Mireya argues that her entry into the United States in 1962 did not use the 1956 priority date she now claims because her immigration form indicated that she was "admitted without visa in accordance with OI 211." She claims that despite raising this contention before the IJ and BIA, both ignored

this argument and failed to cite any authority to refute her claim that the "admitted without visa language" is equivalent to not having used her parents' priority date. However, even if we were to assume Mireya had a valid claim to her parents' marriage date as a valid WHPD under the 1976 savings clause, we would still have to deny the Chapas' petition.

While the language stamped on Mireya's entry document does indeed say, in part, "admitted without visa," that language is only a portion of the notation we must consider. That language is modified by "in accordance with OI 211." A review of the complete language of then-applicable OI 211 lends validity to the IJ's finding that Mireya received LPR status based on her parents' "application" or "petition" in 1962 and therefore she has already used the visa priority date based on her parents' marriage.

The applicable subsection of OI 211 explains that "a child born subsequent to the issuance of an immigrant visa to his accompanying parent and applies for admission *during the validity of such a visa*" is exempted from having to present a valid unexpired immigrant visa. OI § 211.1(a) (emphasis added). This language, in light of the notation on Mireya's immigration form, makes clear that while she was admitted and granted LPR status without her *own* valid unexpired immigrant visa, she was only admitted based upon the "validity of such a visa," which is a direct reference to the validity of her parents' visa petition. Stated differently, Mireya was admitted and granted LPR status in 1962 based on her parents' valid 1956 visa petition—the same one she attempts to use now for a second admission to the United States. Therefore, a plain reading of OI 211 in conjunction with the facts of Mireya's 1962 entry into the United States would foreclose Mireya's use of her parents' visa priority date a second time. *See In re Villarreal-Zuniga*, 23 I. & N. Dec. 886, 889 (BIA 2006) ("[O]nce an approved visa petition is used to obtain a benefit, it cannot be used again.").

No. 10-60776

## CONCLUSION

For the foregoing reasons, we DENY the Chapas' petition and AFFIRM the decision of the BIA.